# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER STOLLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-140 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| COSTCO WHOLESALE CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case has its genesis in Plaintiff's decision to consume part of a shrimp platter while shopping at a Costco in the Chicago suburbs. After Plaintiff left the store without paying for the shrimp (and possibly a pair of gloves), the store declined to press criminal charges but asked the local police department to issue an administrative ticket for retail theft. The police obliged. Not content to settle for a modest measure of vindication when the hearing officer tossed the ticket on a technicality, Plaintiff launched this federal lawsuit, ultimately dragging in more than three dozen named defendants and a host of other as-yet unnamed individuals and entities.

The litigation suffers from many flaws, the most notable of which is that in waiting more than two years after the Costco incident to file suit, most of Plaintiff's claims were time-barred from the start. And though no malicious prosecution claim could accrue until the dismissal of the ticket, the absence of a victory on the merits in that litigation foreclosed that claim too. Plaintiff's satellite motions—seeking disqualification of lawyers, early discovery, and other miscellaneous relief—also lack merit. In short, this entire litigation is completely frivolous and it ends on the merits, such as they are, today. Defendants' motions to dismiss [71, 73, 75] and for summary judgment [87, 91] are granted. Plaintiff's motions to disqualify counsel [36, 38, 40, 56], for

discovery [42, 44, 46, 77, 101], for an evidentiary hearing [58, 67], for Rule 11 sanctions [64], and to strike the Lipe Lyons Defendants' motion for summary judgment [95] are denied. Plaintiff's motions for extension of time [67, 83] and his motion for leave to file a reply brief [122] are granted. Defendants' motions for sanctions under Rule 11 [48, 50, 69] are granted in part, and any Defendant interested in pursuing sanctions should file a position paper by January 30, 2020, in regard to how it believes the Court should proceed in view of the bar order imposed by the Seventh Circuit (see below). Plaintiff's motion to substitute [130] is denied in view of the Seventh Circuit's December 23, 2019 order barring Plaintiff from making any filings (directly or indirectly) in all federal courts in this circuit until he makes full payment of $19,028 in outstanding sanction for the filing of numerous frivolous appeals. See *Wilmington Trust, N.A. v. Stoller, et al.*, Nos. 19-2561 & 19-2591, and *Stoller v. Altisource Residential, L.P., et al.*, No. 19-2923, Order (7th Cir. Dec. 23, 2019).[1] Defendant Law Offices of Lisa T. Damico's motion to join the Lipe Lyons Defendants' response in objection to Plaintiff's motion to substitute [137] is granted.

In view of the dismissal of all of Plaintiff's substantive claims—leaving only the collateral matter of sanctions pending in the district court—the Court will enter a final and appealable judgment under Federal Rule of Civil Procedure 58. See, *e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) ("Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial

---

[1] The Court notes that Judge Coleman recently entered a memorandum opinion and order in which she recommended that the Executive Committee for the Northern District of Illinois consider whether to add Plaintiff to its list of restricted filers. See *Stoller v. Wilmington Trust, N.A.*, No. 18-cv-7169, Docket Entry 178, at 8 (N.D. Ill. Nov. 18, 2019). This Court had intended to make a similar recommendation. However, the Seventh Circuit's bar order accomplishes the same result, at least for as long as it is in place, and given the prohibition on accepting Plaintiff's filings now in place, the Executive Committee could not even receive from Plaintiff a response to a rule to show cause why it should not take the action recommended by Judge Coleman prior to the entry of the bar order.

process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated."); *Bigby v. City of Chicago*, 927 F.2d 1426, 1427-28 (7th Cir. 1991) ("where a case has been resolved on the merits and a fee petition or a motion for sanctions remains pending in the district court * * * the judgment on the merits is final and appealable despite the pendency of collateral matters in the district court").

**I. Background[2]**

Plaintiff Christopher Stoller has sued literally everyone he can find who had anything to do with his prosecution for retail theft—from Costco employees, to arresting officers, to prosecutors, to defense attorneys in this litigation, to public officials in the arresting municipality, and others. According to Plaintiff's complaint, "this action is brought against the Defendants for their violations of 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990, 42 USC § 12101 et seq.," several state laws, and the common law. [1, at 2.] Plaintiff alleges false arrest, false imprisonment and conspiracy under Section 1983, as well as claims for battery, fraud, intentional and negligent infliction of emotional distress, and defamation.

On November 19, 2016, Plaintiff went shopping at the Costco Wholesale warehouse in Melrose Park, Illinois. While shopping inside the store, Plaintiff used a motorized scooter owned by Costco. Among the items that he added to his cart was a pre-made deli shrimp platter. Costco Loss Prevention Officer Christine Carlson personally observed Plaintiff open the container and begin eating the shrimp as he rode around the store. According to Carlson, Plaintiff discarded the

---

[2] For purposes of Defendants' motions to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the amended complaint as true and construes all reasonable inferences in Plaintiff's favor. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). As to Defendants' motions for summary judgment, the Court takes the facts from the parties' Local Rule 56.1 statements [89, 93]. Since Plaintiff did not respond to Defendants' Local Rule 56.1 statements, the facts alleged therein are "deemed admitted" to the extent that Defendants have properly supported them with "specific references to the affidavits, parts of the record, and other supporting materials." Local Rule 56.1(a); see also *Norris v. Serrato*, 761 Fed. Appx. 612, 614 (7th Cir. 2019).

3

container into a trash can after consuming approximately ten shrimp. Carlson retrieved the container from the trash and confirmed it was a Costco product and that it was not paid for.

After bringing the container to the store security office, Carlson informed management that she would approach Plaintiff if he attempted to leave the store without paying for the item. Carlson continued to watch Plaintiff through security cameras as he shopped. At one point, Carlson observed Plaintiff take three pairs of gloves from a display. He removed one pair from the box and concealed them in his jacket pocket, while placing the other two pairs, still in their boxes, under some jackets on a table near the center of the store. Plaintiff proceeded to the checkout and purchased the remaining items in his basket. He then stopped to purchase a meal at the food court and make a stop at the restroom. After eating his meal, Plaintiff headed for the exit of the store on the scooter. Once Plaintiff reached the vestibule—beyond the last point of purchase—Carlson approached him to ask if he would return to the store to discuss the shrimp platter. In an effort to entice Plaintiff back to the store, Carlson removed the purchased groceries from Plaintiff's cart. Plaintiff said to keep the groceries and proceeded to drive the scooter into the parking lot.

Carlson did not try to stop Plaintiff at that time. Shortly thereafter, four Costco employees (including Carlson) confronted Plaintiff at the far end of the parking lot. After a brief interaction, they decided not to try holding him on their own, and instead called Melrose Park police to report the theft. The police responded to the scene and located an individual matching the description of the alleged offender a short distance from Costco. Not surprisingly, the individual was Plaintiff. The officers handcuffed Plaintiff, placed him in a squad car, and returned to Costco for a positive identification. Carlson identified Plaintiff as the person who had eaten the shrimp without paying for them. On behalf of Costco, she indicated that the store did not wish to press charges, but asked instead that Plaintiff be issued a ticket. Melrose Police Officer DeCarlo issued Plaintiff a village

4

citation for retail theft—a civil municipal offense that carries a $100 fine—and a verbal warning for trespass. Plaintiff was then offered the items that he had actually purchased at the store, but he refused them and walked away.

Plaintiff contested the village citation, which proceeded to an administrative hearing at the Melrose Park police station on November 21, 2017. Two attorneys represented Plaintiff at the hearing, along with a prosecuting attorney for the Village and separate counsel retained by Costco to represent Carlson in her capacity as a witness. In the Village's case-in-chief, Carlson and DeCarlo presented testimony regarding the incident. At the close of the Village's evidence, counsel for Plaintiff moved for a directed finding on the ground that the charging document—the ticket—was defective because it referenced a motor vehicle offense rather than retail theft. The hearing officer commented that "as far as the evidence that I have heard thus far, I believe there is sufficient evidence to support the violation." [93, at 3.] However, he determined that "due to the defect in the complaint, I'm going to dismiss the complaint." *Id*.

More than a year later, on January 8, 2019, Plaintiff commenced the instant lawsuit. On May 30, 2019, Plaintiff filed the currently operative first amended complaint [55], which asserts the following claims: "(a) Violation of 42 U.S.C. 1983: arrest, (b) Violation of 42 U.S.C. 1983: detention and confinement, (c) Violation of 42 U.S.C. 1983: strip search, (d) Violation of 42 U.S.C. 1983: conspiracy, (e) Violation of 42 U.S.C. 1983: refusing or neglecting to prevent, (f) Malicious prosecution, (g) Malicious abuse of process, (h) Violation of Ill. Civil Rights Act, (i) False Arrest and imprisonment, (j) Battery, (k) Conspiracy, (l) Intentional infliction of emotional distress, (m) Perjury, (n) Subornation of Perjury." *Id*. at 34-35. Defendants in this case fall roughly into five camps: (1) Costco Defendants (the store where the incident occurred and its employees), (2) Village of Melrose Park Defendants (the municipality whose officers issued a ticket to Plaintiff

5

and the municipality's employees), (3) Damico Law Defendant (the lawyer who prosecuted the ticket), (4) Lipe Lyons Defendants (another law firm that worked for Costco), and (5) Cray Defendants (lawyers representing the Lipe Lyons firm in this case). All Defendants except for the Cray Defendants have either moved to dismiss the complaint or have moved for summary judgment. Plaintiff has filed a plethora of motions seeking to disqualify opposing counsel, conduct limited discovery, and for other relief. Parties on both sides of the case have sought sanctions. All told, approximately two dozen motions have been briefed and are ripe for decision.

## II. Discussion

### A. Motions to Dismiss and Motions for Summary Judgment

Defendants have filed both motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motions for summary judgment under Federal Rule of Civil Procedure 56. Their 12(b)(6) motions challenge the sufficiency of Plaintiff's amended complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Defendants' motions for summary judgment seek judgment as a matter of law. Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

Defendants argue in their motions to dismiss and for summary judgment that Plaintiff's claims are barred by the applicable statutes of limitation. A motion to dismiss based on a statute of limitations defense is properly brought under Rule 12(b)(6). *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Although the statute of limitations is an affirmative defense, a court may dismiss a claim as time-barred if the complaint sets forth the necessary information to show that the statute of limitations has expired. See, *e.g.*, *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). A statute of limitations defense may also be raised in a motion for summary judgment. See, *e.g.*, *Franklin v. Warmington*, 709 Fed. Appx. 373, 375 (7th Cir. 2017).

Four dates critically affect the proper disposition of this litigation:

(1) November 19, 2016—the date on which Melrose Park police officers issued Plaintiff a village citation for retail theft;

(2) November 23, 2016—the date on which Costco employee Tony Salerno, working with Costco's third-party administrator, Gallagher Bassett Services, Inc., wrote a letter to counsel for Plaintiff acknowledging counsel's representation of Plaintiff in the village citation matter;

(3) November 21, 2017—the date on which the Administrative Hearing Officer dismissed Plaintiff's citation because it incorrectly cited to the ordinance for a vehicular moving violation; and

(4) January 8, 2019—the date on which Plaintiff filed the instant lawsuit.

Either a one-year or two-year statute of limitations applies to each of Plaintiff's cognizable claims.[3] Plaintiff brings his federal claims under 42 U.S.C. § 1983. Because Section 1983 does not have an express statute of limitations provision, federal courts hearing claims under that statute adopt the limitations period for personal injury claims applied in the relevant forum state—which in Illinois is two years. See *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 912 (N.D. Ill. 2015). A two-year statute of limitations also applies to state law claims involving false arrest or imprisonment and malicious prosecution. *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 932 (N.D. Ill. 2000); see also 735 ILCS 5/13–202 ("Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty *** shall be commenced within 2 years next after the cause of action accrued.").

---

[3] Under the general rule followed by both the federal courts and Illinois state courts, there is no civil action to recover damages caused by perjury or subornation of perjury, whether committed in the course of, or in connection with, a civil action or suit and regardless of whether the alleged perjurer was a party to or a witness in the action or proceeding. See *Liddell v. Smith*, 345 F.2d 491, 494 (7th Cir. 1965); see also *Parks v. Neuf*, 578 N.E.2d 282, 284 (Ill. App. 1991).

Under the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a), a one-year statute of limitations applies to claims against the municipal Defendants and their employees. See *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 747 (N.D. Ill. 2016) (pursuant to Tort Immunity Act, intentional infliction of emotional distress claim not brought within one year of arrest was properly dismissed); *Davenport v. Dovgin*, 545 Fed. Appx. 535, 538–39 (7th Cir. 2013) (claims against local entity or its employees for an injury, including intentional infliction of emotional distress, fall within one-year statute of limitations pursuant to 745 ILCS 10/8-101(a)); *Kaufmann v. Schroeder*, 946 N.E.2d 345, 348-49 (Ill. Sup. 2011) (affirming dismissal of intentional infliction of emotional distress claim against municipal corporation under 745 ILCS 10/8–101); *Woidtke v. St. Clair County*, 335 F.3d 558, 561 (7th Cir. 2003) (stating that one- year statute of limitation applied to suit alleging negligence by county and public defender). Allegations of willful and wanton conduct do not deprive a local public entity and its employees of the benefit of the shorter limitations period provided in Section 8–101. *Cooperwood v. Farmer*, 315 F.R.D. 493, 500 (N.D. Ill. 2016). Defamation actions in Illinois also are subject to a one-year statute of limitations. See 735 ILCS 5/13–201 ("Actions for slander, libel or publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued"); see also *Peal v. Lee*, 933 N.E.2d 450, 461 (Ill. App. 2010) ("The statute of limitations to file a defamation claim is one year.").

Federal law governs the time at which a claim accrues and, under § 1983, claims accrue when the Plaintiff knows or had reason to know that his constitutional rights were violated. *Mihelic v. Will County*, 826 F. Supp. 2d 1104, 1111 (N.D. Ill. 2016). Claims for excessive force and unlawful search and seizure accrue immediately at the time of the arrest and search. *Id*. False arrest claims under § 1983 accrue when the plaintiff became detained pursuant to the legal process

such as when a magistrate judge bounds over the defendant or when arraignment occurs. *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). A claim for intentional infliction of emotional distress stemming from an arrest or prosecution accrues on the date of the arrest. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 747 (N.D. Ill. 2016). A state law claim for malicious prosecution accrues at the time the state is precluded from seeking reinstatement of the charges. *Thurmond v. Mills*, 570 F. Supp. 2d 1045, 1046 (N.D. Ill. 2008).

As the cases and statutes cited above confirm, almost all of Plaintiff's legally cognizable claims accrued on the date of his arrest in November 2016, or within a few days thereafter. The only exception is Plaintiff's malicious prosecution claim, which could not have been added until after the administrative hearing in November 2017. Because Plaintiff did not commence this litigation until January 2019, all of his claims that are subject to the Tort Immunity Act's one-year statute of limitation—that is, the claims against the municipal Defendants—are time-barred. And all of Plaintiff's federal claims and personal injury claims are time-barred under the applicable two-year limitations period.

Only Plaintiff's malicious prosecution claims against the non-municipal Defendants survive application of the statutes of limitations. And those claims, too, suffer from an obvious and uncurable defect evident from the pleadings. In order to state a cause of action for malicious prosecution, the plaintiff must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. Sup. 1990); see also *Joiner v. Benton Community Bank*, 411

N.E.2d 229, 232 (Ill. Sup. 1980).  If any one of these elements is lacking, recovery is barred. *Misselhorn v. Doyle*, 629 N.E.2d 189, 192 (Ill. App. 1994).  The second element, favorable termination, has been construed by Illinois courts to require a disposition indicative of the plaintiff's innocence.  *Barnes v. City of Centralia*, 943 F.3d 833-34 (7th Cir. 2019); *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. Sup. 1996).  Here, as the transcript attached to the complaint confirms, [see 55, at 189], the hearing officer opined that the case against Plaintiff on the merits was substantial, but dismissed the ticket on a technicality.  See *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.")  Specifically, the arresting officer indicated that the ticket was issued for a traffic offense, not for the retail theft offense supported by the testimony at the hearing.

After Defendants pointed out the limitations problems that permeate Plaintiff's case from top to bottom, Plaintiff argued [see 101, at 5-13] that the Court should invoke equitable tolling to save Plaintiff's case from dismissal.  Equitable tolling "pauses the running of, or tolls a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'"  *Madison v. U.S. Dep't of Labor*, 924 F.3d 941, 946-47 (7th Cir. 2019) (quoting *Lozano v. Montoya-Alvarez*, 572 U.S. 1, 10 (2014)); see also *Sparre v. U.S. Dep't of Labor*, 924 F.3d 398, 402 (7th Cir. 2019) ("In this circuit, '[e]quitable tolling is granted sparingly only when extraordinary circumstances far beyond the litigant's control prevented timely filing.'" (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015)).  "It is the burden of the litigant who invokes equitable tolling to establish each of these two elements: diligence in the pursuit of her rights and the existence of

11

an extraordinary circumstance that nonetheless stood in the way of her making a timely filing." *Madison*, 924 F.3d at 1232.

In support of his equitable tolling argument, Plaintiff claims to have been a disabled person since at least 1996 and avers that he has mental and physical disabilities which have prevented him from managing his affairs or acting upon his legal rights. Plaintiff further states that he was subject to a guardianship order entered in 2011 and terminated in 2013. According to Plaintiff's brief, he was hospitalized at least four times in 2018, suffers from several physical and mental conditions, and has an extensive list of prescribed medications. All of these circumstances, Plaintiff contends, prevented him from filing his complaint in a timely fashion.

Plaintiff's protestation that he was unable to file this lawsuit until 2019 is belied by the discovery by Costco of at least four lawsuits—three in federal court (17cv1349, 18cv47, 18cv7169) and one in state court (2017 L 006178)—filed by Plaintiff in 2017 and 2018. [See 69, at 13.] The picture painted by Plaintiff's equitable tolling argument—and echoed in his more recent motion to substitute [130]—also is undermined by the confident presentation that Plaintiff made in open court on May 2, 2019, shortly before he filed the operative complaint in this matter. At that time, Plaintiff advised the Court that he has been "an appellate brief writer for 40 years," that he has "been to the Supreme Court 32 times," and that he has "changed law in four reported cases." Transcript of May 2, 2019 hearing, at 3, 4, 13. According to Plaintiff, he was a legal assistant to both U.S. District Judge George Leighton and Illinois Supreme Court Justice Seymour Simon. Plaintiff further insisted that although a lawyer named Philip Kiss did file an appearance [6] in this matter, Attorney Kiss' role in the litigation is "advisory" and Plaintiff himself would be responsible for the pleadings and briefing. Transcript of May 2, 2019 hearing, at 6. At the same hearing, the Court warned Plaintiff that Rule 11 could "potentially shift the cost of this entire

litigation to the plaintiff, if the sanctions are warranted" and urged Plaintiff to consider whether this was "the World War III that [he] wants to be unleashed here." *Id*. at 9-10. At that time, Plaintiff told the Court that he would amend his complaint, and he did so later that month.

Based on Plaintiff's pursuit of other litigation during the limitations periods, his extensive litigation experience, and the confident presentation he made at the May 2 status and motion hearing, the Court finds that equitable tolling would be inappropriate in this case. Plaintiff had ample opportunity to commence any appropriate lawsuit arising out of the November 2016 incident at the same time that he filed his other lawsuits in 2017 and 2018. In truth, however, there was no appropriate time to bring this baseless lawsuit.

Accordingly, the motions to dismiss filed by the Costco Defendants [71], the Melrose Park Defendants [73], and the Damico Law Defendants [75], and the motions for summary judgment filed by the Lipe Lyons Defendants [87, 91] are granted. Plaintiff's motions to strike the Lipe Lyons Defendants' motion for summary judgment [95] and his motion for Rule 56(d) discovery [101] are denied, as the motion for summary judgment was properly filed and nothing produced in Rule 56(d) discovery could revive Plaintiff's meritless claims. However, Plaintiff's motions for extension of time [67, 83] and his motion for leave to file a reply [122] are granted. On the Court's own motion, the claims against the Cray Defendants are dismissed, as there is no private right of action for subornation of perjury. See discussion and case cited at 8 n.2, *supra*.

### B. Motions to Disqualify

Given that all of Plaintiff's claims are either non-cognizable, time-barred, or otherwise subject to dismissal with prejudice on the face of the complaint, most of the other motions in this case are moot. For example, the Court need not explore in detail the motions to disqualify counsel, which appear defective on several grounds. As other courts have observed, "[m]otions to

13

disqualify opposing counsel are viewed with disfavor * * * because they are often interposed for tactical reasons and result in unnecessary delay." *Bennett Silvershein Associates v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991). That certainly appears to be the case here, as it is clear from the amended complaint and the hearing transcript that the attorney Defendants had nothing to do with the original arrest or the decision to prosecute Plaintiff for retail theft, and had (at most) tangential involvement in the actual prosecution itself. In other words, the lawyers whose disqualification has been sought never should have been added to the lawsuit in the first place. The ethical rules are designed "to protect the interests of those harmed by conflicting representations rather than serve as a weapon in the arsenal of a party opponent." *DT Boring v. The Chicago Public Building Commission*, 2016 WL 3580756, at *6 (N.D. Ill. June 28, 2016). This is why, in general, only a current or former client has standing to seek disqualification of an attorney based on a conflict of interest. *Id*. Finally, even if Plaintiff's allegations, if timely advanced, might have created a situation in which one or more lawyer Defendants had relevant evidence to present at trial—for example, on the extent of limited involvement at the hearing—the local rule prohibiting a lawyer-witness from acting as an advocate in a trial or evidentiary hearing does not prohibit the attorney from handling other phases of the litigation. See *Mercury Vapor Processing Tech., Inc. v. Village of Riverdale*, 545 F. Supp. 2d 783, 788-89 (N.D. Ill. 2008). For all of these reasons, Plaintiff's motions to disqualify various attorneys [36, 38, 40, 56] are all denied.

**C.     Miscellaneous Motions**

Plaintiff also has filed several motions seeking limited discovery of certain lawyers [42, 44, 46], production of an affidavit [77], and for an evidentiary hearing [58, 67]. These motions [42, 44, 46, 58, 67, 77] too are denied as moot in view of the dismissal of all of Plaintiff's claims.

### D. Motions for Sanctions

This leaves the cross-motions for Rule 11 sanctions filed by various Defendants [48, 50, 69] and by Plaintiff [64]. Rule 11 establishes that each time an attorney or unrepresented party presents a pleading to the court, he "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that (1) it is "not being presented for an improper purpose," (2) "the claims are warranted by existing law," and (3) "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). A court may impose sanctions not only on an attorney but also "on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. In particular, a frivolous argument or claim is one that is 'baseless and made without a reasonable and competent inquiry.'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). In determining whether to impose sanctions, a court "must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citations and internal quotation marks omitted).

Plaintiff's motion for sanctions [64], like the rest of this lawsuit, is frivolous and is denied. Defendants' motions for sanctions [48, 50, 69] are granted. As Defendants note, Rule 11 applies to pro se litigants as well as attorneys. *Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994); *Karageorge v. Urlacher*, 2019 WL 4735436, at *2 (N.D. Ill. Sept. 27, 2019). Often courts give non-lawyers more latitude when they stumble out of the gate in litigation because they are not tutored in the law. *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990). But Plaintiff can hardly seek refuge on that ground, for he boasted in open court about his legal prowess at the very moment the Court gave him leave to file an amended complaint.

As shown above, every one of Plaintiff's claims suffered from a defect at the outset of the case. As an experienced litigant, Plaintiff "should have known that his position [was] groundless." *CUNA Mut. Ins. Soc'y v. Office of Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560-61 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. Of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). But rather than going quietly into that good night once Defendants pointed out those obvious flaws, Plaintiff expanded the litigation with his amended complaint, as well as a spate of additional baseless accusations and motions. Defendants were compelled to point out the myriad flaws in Plaintiff's complaint, as well as respond to the barrage of motions. In these circumstances, Rule 11 sanctions are appropriate.

Ordinarily, the appropriate sanction in circumstances like these would be to permit any Defendant so inclined to submit a claim for the reasonable attorneys' fees incurred as a result of the frivolous litigation unleashed by Plaintiff, providing in support of the request appropriate documentation setting out the work performed, the hours expended, and the billing rate for each timekeeper. Plaintiff would then be given time to file a response setting forth any objections to the claimed amounts and/or explaining any other reason why sanctions in the form of attorneys' fees and costs would not be appropriate. However, as noted above, the Seventh Circuit's order barring the clerks of all federal courts in this circuit from accepting any papers submitted either directly or indirectly by Plaintiff or on his behalf at least temporarily bars the Court from proceeding in that fashion.

While it would seem inequitable to allow Plaintiff to walk away scot free from his abusive litigation conduct in this case, the Court has concerns about its ability to proceed toward imposing a sanction without permitting Plaintiff an opportunity to respond to Defendants' itemized requests for payment. Moreover, given that Plaintiff already owes more than $19,000 in uncollected

sanctions for prior frivolous litigation, Defendants may wish to consider whether the investment in pulling together their time records and presenting a request for sanctions in an amount certain would be worth the effort when measured against the likelihood of recovery.  The Court requests that any Defendant interested in pursuing an award of sanctions file a position paper by January 30, 2020, in regard to how it believes the Court should proceed in view of the highly unusual circumstances set out above.  The Court stresses that this request is an opportunity, not an obligation, given the possibility that one or more—or perhaps all—Defendants will conclude that *any* further effort in this case is not worth the cost or effort.

Dated: January 16, 2020                      _____
                                                  Robert M. Dow, Jr.
                                                  United States District Judge